IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-1106

| | |
|---|---|
| DONNA MANERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DESCO, INC., )<br>)<br>Defendant. )<br>)<br>) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. Desco, Inc. (the "Company") violated the law when it fired Plaintiff Donna Maners ("Donna" or "Plaintiff"). Remarkably, Donna began working for the Company on or around May 11, 1981. For more than forty years, she dedicated herself to the Company and helped it thrive and grow. She worked in various positions during her long, successful tenure, and was a loyal team player through thick and thin. Donna loved working for the Company.

2. But that was all about to come crashing down. The Company had Donna train her own significantly younger replacement. Then, when it looked like she was going to need more time off for her disability, the Company illegally fired her. Donna must be made whole for the harms and losses that she has endured. Accordingly, Donna brings suit against the Company for violations of the Americans with Disabilities Act (Count I), Age Discrimination in Employment Act (Count II), Family and Medical Leave Act (Count III), and Wrongful Discharge in violation of North Carolina Public Policy (Count IV).

## II. PARTIES, JURISDICTION, AND VENUE

3. Plaintiff resides in Rowan County, North Carolina.

4. Defendant Desco, Inc. is a Rowan County, North Carolina company, with its principal office located at 1205 Lincolnton Road, Salisbury, North Carolina 28147.

5. Defendant's registered agent is Joshua G. Spry, located at 1205 Lincolnton Road, Salisbury, North Carolina 28147.

6. Plaintiff worked for Defendant at 1205 Lincolnton Road, Salisbury, North Carolina 28147.

7. A substantial portion of the acts or omissions giving rise to this lawsuit took place in Rowan County, North Carolina.

8. Venue is proper in the District Court of North Carolina because: (a) Defendant's unlawful employment practices were committed in Rowan County, North Carolina; (b) Plaintiff would have worked in Rowan County, North Carolina but for Defendants' unlawful employment practices; (c) Defendant resides in Rowan County, North Carolina because they are subject to the Court's personal jurisdiction there in light of the business it transacts in Rowan County and elsewhere in North Carolina; and (d) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Rowan County, North Carolina.

## III. FACTUAL STATEMENT

9. Donna began her time with the Company on or around May 11, 1981.

10. Donna worked in various positions during her long, successful tenure with the Company.

11. In or around November 2021, Joshua Spry became the Company's Chief Operating Officer. Earl Riddle became the Director of Finance and Treasurer.

12. In or around January 2022, Spry hired Lisa Lee into an Office Administrator position without consulting Riddle. Spry assured Donna and Donna Glass, who worked in accounts payable, their jobs would be safe despite the additional hiring of Lee.

13. Donna began training Lee on how to do her job.

14. However, Donna was suspicious of what was happening. Lee's role was Office Administrator, as opposed to Donna's role in Accounts Receivable, but Donna was essentially teaching Lee how to replace her.

15. In May 2022, the Company suddenly terminated Riddle from his co-VP and Director of Finance position. The following week, the Company hired Stephanie Jones as its new Chief Financial Officer.

16. Spry reassured Donna all office staff jobs were safe. In a June 2022 meeting between Spry and the office staff, he again assured the team that no office staff positions were at risk of termination.

17. On or around December 20, 2022, Donna took two days of PTO to have a breast biopsy after an abnormal mammogram. On or around February 2, 2023, Donna again took two days of PTO to have a lumpectomy after her biopsy came back abnormal.

18. On February 3, 2023, Donna's pathology report confirmed she had intraductal papilloma but also showed margins with malignant ductal carcinoma in situ. Donna had breast cancer. Her surgeon and oncologist recommended a breast MRI to further evaluate.

19. Donna kept the Company up-to-date and informed of her diagnoses and potential needs for reasonable accommodations.

20. Upon returning to work on or around February 6, 2023, Donna discussed the details of a new Credit Manager position with Spry. Spry told Donna he was "not setting you (Donna) up for failure." He said he believed she was the best person for the position.

21. Two days later, Donna spoke to Jones about her need for an MRI on February 15. She said she'd need to take half the day off and then return to work.

22. On or around February 15, 2023, Donna went to her appointment. After the MRI, Donna contacted Lisa Lee to inform her she would be using a full day of PTO due to side effects from medication related to the MRI.

23. On or around February 16, 2023, Donna arrived at work and noticed VP Phillip Kerley and Jones standing outside of her door. They informed her the Company was terminating her employment, effective immediately.

24. Donna asked for a reason. The Company refused to give her one.

25. After being escorted out of the building, Donna texted Spry, asking for a reason for her termination. Spry told her only that the decision had been made.

26. Donna filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on April 18, 2023.

27. The EEOC issued its Right to Sue letter on September 27, 2023.

## IV. LEGAL CLAIMS

### Count I
*(Violation of the Americans with Disabilities Act)*

28. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

29. Plaintiff was disabled in that her breast cancer was a physical impairment that substantially limited one or more major life activities, including lifting, working, and sleeping, among others; and the cancer also substantially limited major bodily functions of normal cell growth and integumentary system functions.

30. Plaintiff had a record or history of a substantially limiting impairment.

31. Defendant otherwise regarded Plaintiff as having a disability.

32. Plaintiff requested reasonable accommodations (leave of absences and time off and modified work schedules related to her disability).

33. Plaintiff suffered an adverse employment action when Defendant terminated her employment on the basis of her real or perceived disability and/or in retaliation for receiving or requesting a reasonable accommodation (medical leave).

34. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

35. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and

managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

**Count II**
*(Violations of Age Discrimination in Employment Act)*

36. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

37. Plaintiff is, and at all relevant times was, an employee covered by the protections of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et. Seq. ("ADEA").

38. Defendant employed at least 20 employees and was engaged in commerce at all relevant times.

39. Plaintiff was a 62-year old employee at the time of her termination.

40. Plaintiff was qualified for her position at all relevant times. Defendant treated Plaintiff disparately in relation to her similarly situated peers that were under the age of 40 and/or significantly younger than Plaintiff.

41. Defendant's explanation for Plaintiff's termination amounts to pretext for unlawful age discrimination.

42. Defendant otherwise exhibited age bias by, but not limited to, explicitly seeking to employ a younger workforce, systematically terminating older employees, and ultimately terminating Plaintiff and other older workers.

43. Defendant decided to terminate Plaintiff's employment on the basis of her age in violation of the ADEA.

44. Defendant also engaged in a pattern or practice of age discrimination which resulted in Plaintiff's termination, which also violated the ADEA.

45. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, and other consequential damages.

46. Defendant's actions were done willfully, and in a manner that demonstrates reckless disregard for Plaintiff's rights under the ADEA. As a result of Defendant's conduct, Plaintiff is entitled to recover liquidated damages.

## Count III
### (*Violation of the Family and Medical Leave Act*)

47. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

48. Plaintiff required leave protected under the Family and Medical Leave Act because of her own serious health condition. Plaintiff was employed by Defendant for 12 months and worked at least 1,250 hours during the 12 months prior to the start of her requested leave. Defendant employs 50 or more employees within a 75-mile radius pursuant to 29 C.F.R. §825.111.

49. Plaintiff engaged in protected activity by alerting Defendant to her need to take time off because of her own serious health condition. Defendant took an action that a reasonable employee would have found materially adverse when it terminated Plaintiff's employment. There exists a causal connection between Plaintiff's protected activity and Defendant's adverse action.

50. Defendant violated the FMLA when it terminated Plaintiff's employment because of

7

her time off for her own serious health condition.

51. Defendant violated the FMLA by retaliating against Plaintiff for her future need of FMLA leave.

52. Defendant violated the FMLA by interfering with Plaintiff's right to take FMLA leave by firing her before she could take such leave.

53. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, and costs.

54. Defendant's actions were not in good faith. Nor did Defendant have objectively reasonable grounds to believe it was not violating the FMLA. Defendant's actions were done willfully and in a manner that demonstrates a reckless disregard for Plaintiff's rights under the FMLA. As a result of Defendant's conduct, Plaintiff is entitled to recover liquidated damages.

### Count IV
(*Wrongful Discharge in Violation of North Carolina Public Policy*)

55. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

56. Plaintiff was an at-will employee of Defendant.

57. Defendant employed at least fifteen (15) employees at all relevant times.

58. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a) seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of age or disability ("handicap").

59. Defendant violated the public policy of North Carolina by terminating Plaintiff because Defendant regarded Plaintiff as having a physical or mental impairment which substantially limits one or more major life activities.

60. Plaintiff qualified as an individual with a disability in that she was actually disabled/handicapped and was perceived as such.

61. Defendant violated North Carolina public policy by terminating Plaintiff because of her age, and actual or perceived disability and/or handicap.

62. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in her earning capacity, emotional distress, damage to his reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed.

63. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

**JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment again Defendant and order the Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

1. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.* and the

Americans with Disabilities Act;

2. Award Plaintiff liquidated damages under 29 U.S.C. § 626(b);

3. Award Plaintiff liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 20th day of December, 2023.

/s/ Sean F. Herrmann
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue Ste. 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*